IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KABINE F., | HON. JOHN MICHAEL VAZQUEZ |
| Petitioner, | |
| v. | Civil Action No. 19-16614 (JMV) |
| CHARLES GREEN, *et al.*, | **OPINION** |
| Respondents. | |

**VAZQUEZ, District Judge:**

**I.     INTRODUCTION**

On August 9, 2019, the Petitioner, Kabine F.,[1] an immigration detainee currently held at Essex County Correctional Facility, in Newark, New Jersey, filed a counseled habeas corpus petition seeking relief pursuant 28 U.S.C. § 2241 in his related habeas case, *Kabine F. v. Green*, Civ. No. 19-16520 (Petitioner's "First § 2241 Action"). The Court summarily dismissed that petition on August 12, 2019. (*See* First § 2241 Action at DEs 2 and 3.)

Petitioner, disagreeing with the manner in which the Court resolved his Petition (*see* DE 1 at ¶¶ 30-40) – and apparently believing that a motion for reconsideration in his First § 2241 Action, as authorized by L. Civ. R. 7.1(i), was not the appropriate vehicle to air that disagreement – initiated the present stand-alone § 2241 matter on August 13, 2019 via the filing of another habeas petition (the "Petition") advancing substantially the same claims and arguments raised in his First § 2241 Action. (*See*, *generally*, DE 1.) Petitioner, in essence, asserts that the Court's summary

---

[1] Consistent with guidance regarding privacy concerns in immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioner is identified herein only by his first name and the first initial of his last surnames.

dismissal of his First § 2241 Action was flawed because it misstates the legal basis for his current detention, disregards the holdings in two key decisions cited by Petitioner, *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422 (3d Cit. 2016) and *Osario-Martinez v. Att'y Gen. United States of America*, 893 F.3d 153 (3d Cir. 2018), and relies on an improper standard of review. For the reasons detailed below, none of these assertions provide a basis to grant Petitioner the habeas relief he seeks nor do they require the Court to reconsider its summary dismissal of the First § 2241 Action. Instead, his present Petition, like his August 9th petition, is summarily dismissed.

**II.    BACKGROUND**

The facts underlying Petitioner's present detention, as summarized by the Court in its August 12th dismissal opinion, are clearly established by the record and are not otherwise in dispute. Petitioner is a citizen of Guinea who has resided in the United States since 1987, when he was admitted on a visa, which has long since lapsed. (*See* DE 1 at ¶¶ 1-2.) Petitioner has been detained by immigration authorities since June 24, 2019 when he attempted to re-enter the United States at John F. Kennedy International Airport using a fraudulent U.S. passport; Petitioner was then returning from a trip abroad to visit his ill father. (*Id.* at ¶ 3.) The Department of Homeland Security ("DHS") issued a Notice and Order of Expedited Removal to Petitioner on that same day, finding him inadmissible pursuant to 8 U.S.C. § 1182(6)(C)(ii) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . admission into the United States . . . is inadmissible") and § 1182(7)(A)(i)(I) ("any immigrant at the time of application for admission . . . who is not in possession of a . . . valid entry document . . . is inadmissible"). (*See* DE 1-3 at PageID: 41-42.) Petitioner, in response, requested withholding of removal to Guinea under the Convention Against Torture ("CAT"). (*See* DE 1-2 at PageID: 22.) On July 19, 2019, an asylum officer – after interviewing Petitioner on July 10, 2019 (*see* DE 1-3 at PageID: 27), and again on

July 17, 2019 (*see id.* at PageID: 39) – denied Petitioner's request for CAT protection. (*See* DE 1-2 at PageID: 21.) On July 23, 2019, Immigration Judge ("IJ") Carrie C. Johnson-Papillo affirmed that denial and referred Petitioner's immigration case back to DHS "for removal of the alien." (DE 1-1 at PageID: 19-20.)

Petitioner filed his first habeas petition on August 9, 2019. (*See* First § 2241 Action at DE 1.) The Court, in summarily dismissing that pleading, observed that Petitioner is now detained pursuant to a final order of removal, and thus, his detention is governed by the post-removal statute, 8 U.S.C. § 1231(a). (*See* First § 2241 Action, DE 2 at 3.) Nothing in Petitioner's current Petition undermines that ruling; indeed, that prior determination likewise supports summary dismissal of Petitioner's present habeas case. Again, § 1231(a)(6) applies to "aliens who[, like Petitioner,] are inadmissible under 8 U.S.C. § 1182[.]" *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 224-25 (3d Cir. 2018). The Court accordingly dismissed the First § 2241 Action as premature because Petitioner's less-than-two-month period of immigration detention was – and is still is – far short of the six months, *i.e.*, the period of § 1231 post-removal-order detention that, in accordance with *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Guerrero-Sanchez*, is presumptively reasonable. (*See* First § 2241 Action, DE 2 at 3-4.)

Petitioner's present § 2241 Petition followed on August 13, 2019.[2] Petitioner, by way of that pleading, avers that because his "order of removal was issued under 8 U.S.C. § 1225(b)(1), . . . . 8 U.S.C. § 1252(e)(2) governs [this Court's] review of [the propriety of that order]." (DE 1 at ¶

---

[2] Again, Petitioner's current Petition fails to present any compelling authority which undermines the propriety of the way in which the Court summarily disposed of the First § 2241 Action. Petitioner instead claims only that the Court should have addressed the specific habeas arguments raised in that pleading. The Court wishes to make clear that it did consider – and, as evidenced by its summary dismissal of the First § 2241 Action, implicitly rejected – those claims. Nonetheless, the Court will, at this time, explicitly address the particular habeas arguments raised by Petitioner in both his August 9th and August 13th habeas pleadings.

49.) According to Petitioner, § 1252(e) divests this Court of the ability to meaningfully review the constitutionality of expedited removal orders issued pursuant to § 1225(b)(1), *i.e.*, suspends the privilege of the writ of habeas corpus. (*Id.* at ¶¶ 48-52.) And because Petitioner, specifically, has developed significant ties to the United States since arriving here in 1987, he is afforded constitutional protections that most aliens subject to expedited removal do not receive. (*Id.*) Thus, says Petitioner, § 1252(e) is unconstitutional because application of that statute, as applied to him, would violate the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, which states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." (*Id.*) Petitioner likewise claims that because he is afforded greater constitutional protections than the typical alien deemed inadmissible under § 1225(b)(1), DHS and the IJ's limited review and cursory denial of his CAT claim deprived him of his due process right to a full and fair hearing. (*Id.* at ¶¶ 53-54.) In light of these considerations, Petitioner requests only, as he did in his first petition, that the Court order that his removal proceedings be adjudicated in a "regular" – as opposed to an expedited – proceeding. (*Id.* at PageID: 15-16.)

### III. RELEVANT LEGAL STANDARDS AND ANALYSIS

Under 28 U.S.C. § 2241(c), habeas relief may be extended to an immigration detainee only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Under Rule 4 of the Rules Governing § 2254 Cases (the "Habeas Rules"), applicable to this § 2241 proceeding

4

under Habeas Rule 1(b), this Court is presently required to examine the Petition to determine whether it should be dismissed as plainly unmeritorious.

As noted, Petitioner's now-challenged removal order was issued pursuant to § 1225(b)(1). The Third Circuit, in *Castro*, 835 F.3d 422, detailed "the statutory and regulatory provisions of the expedited removal regime . . . at the heart of this case." 835 F.3d at 425. In so doing, the court first summarized "§ 1225(b)(1) and its implementing regulations, which lay out the administrative side of the expedited removal regime." *Id.*

> Under 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to expedited removal if an immigration officer determines they are inadmissible due to misrepresentation or lack of immigration papers: (1) aliens "arriving in the United States," and (2) aliens "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border."[3] *See* 8 U.S.C. § 1225(b)(1)(A)(i) & (iii); Designating Aliens for Expedited Removal, 69 Fed Reg. 48877-01 (Aug. 11, 2004). If an alien falls into one of these two classes, and she indicates to the immigration officer that she fears persecution or torture if returned to her country, the officer "shall refer the alien for an interview by an asylum officer" to determine if she "has a credible fear of persecution [or torture]." 8 U.S.C. § 1225(b)(1)(A)(ii) & (B)(ii); 8 C.F.R. § 208.30(d). The statute defines the term "credible fear of persecution" as "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title." 8 U.S.C. § 1225(b)(1)(B)(v); *see also* 8 C.F.R. § 208.30(e)(3) ("An alien will be found to have a credible fear of torture if the alien shows that there is a significant possibility that he or she is eligible for withholding of removal or deferral of removal under [CAT].").
>
> Should the interviewing asylum officer determine that the alien lacks a credible fear of persecution (*i.e.*, if the officer makes a "negative credible fear determination"), the officer orders the

---

[3] "Any aliens otherwise falling within these two categories but who are inadmissible for reasons other than misrepresentation or missing immigration papers are referred for regular—*i.e.*, non-expedited—removal proceedings conducted under 8 U.S.C. § 1229a." *Castro*, 835 F.3d at 425 n.2 (citing 8 U.S.C. § 1225(b)(2)(A)).

removal of the alien "without further hearing or review," except by an IJ as discussed below. 8 U.S.C. § 1225(b)(1)(B)(iii)(I). The officer is then required to "prepare a written record" that must include "a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in the light of such facts, the alien has not established a credible fear of persecution." *Id.* § 1225(b)(1)(B)(iii)(II). Next, the asylum officer's supervisor reviews and approves the negative credible fear determination, after which the order of removal becomes "final." 8 C.F.R. § 235.3(b)(7); *id.* § 208.30(e)(7). Nevertheless, if the alien so requests, she is entitled to have an IJ conduct a *de novo* review of the officer's negative credible fear determination, and "to be heard and questioned by the [IJ]" as part of this review. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42(d). Assuming the IJ concurs in the asylum officer's negative credible fear determination, "[t]he [IJ]'s decision is final and may not be appealed," and the alien is referred back to the asylum officer to effect her removal. 8 C.F.R. § 1208.30(g)(2)(iv)(A).

*Castro*, 835 F.3d at 425-26.

Here, it is undisputed that Petitioner was, at the time he attempted to enter the United States at JFK Airport using a fraudulent passport, an arriving alien applying for admission to this country. He is therefore subject to the same administrative regime, detailed above, governing the inspection and admission of all § 1225 arriving aliens. *See Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019) ("An arriving alien, like Petitioner, who attempts to enter the United States at a designated point of entry (such as an airport) is inspected by an immigration officer upon arrival. Unless that arriving alien is "clearly and beyond a doubt entitled to be admitted," he will undergo removal proceedings to determine admissibility.") (citing *Clark v. Martinez*, 543 U.S. 371, 373 (2005); 8 U.S.C. §§ 1225(a)(3) & (b)(2)(A)). It is equally clear that the administrative procedures laid out in *Castro* were utilized when Petitioner sought to be admitted on June 25, 2019. Indeed, the record conclusively shows that Petitioner was denied admission because he lacked appropriate immigration papers and attempted to obtain admission through fraudulent means. As *Castro*

makes clear, under these circumstances, Petitioner presumptively falls within the expedited removal regime. Petitioner cites no legal authority – nor has the Court independently found any – which compels the Court to find otherwise.

Accordingly, "8 U.S.C. § 1252, which specifies the scope of judicial review of . . . expedited removal orders[,]" governs the Court's review of Petitioner's habeas claims. *Castro*, 835 F.3d at 425. The Third Circuit explained in the following manner:

> This statute narrowly circumscribes judicial review for expedited removal orders issued pursuant to § 1225(b)(1). It provides that "no court shall have jurisdiction to review . . . the application of [§ 1225(b)(1)] to individual aliens, including the [credible fear] determination made under [§ 1225(b)(1)(B) ]." 8 U.S.C. § 1252(a)(2)(A)(iii). Moreover, except as provided in § 1252(e), the statute strips courts of jurisdiction to review: (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited removal] order"; (2) "a decision by the Attorney General to invoke" the expedited removal regime; and (3) the "procedures and policies adopted by the Attorney General to implement the provisions of [§ 1225(b)(1)]." *Id.* § 1252(a)(2)(A)(i), (ii) & (iv). Thus, the statute makes abundantly clear that whatever jurisdiction courts have to review issues relating to expedited removal orders arises under § 1252(e).
>
> Section 1252(e), for its part, preserves judicial review for only a small subset of issues relating to individual expedited removal orders:
>
>> Judicial review of any determination made under [§ 1225(b)(1)] is available in habeas corpus proceedings, but shall be limited to determinations of—
>>
>> (A) whether the petitioner is an alien,
>>
>> (B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and
>>
>> (C) whether the petitioner can prove . . . that the petitioner is [a lawful permanent resident], has been admitted as a refugee . . . or has been granted asylum . . . .

> *Id.* § 1252(e)(2).
>
> In reviewing a determination under subpart (B) above—*i.e.*, in deciding "whether the petitioner was ordered removed under [§ 1225(b)(1)]"—"the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal." *Id.* § 1252(e)(5).

*Castro*, 835 F.3d at 426-27.

Here, Petitioner undisputedly is (A) an alien; (B) ordered removed under § 1225(b)(1); (C) who is unable to prove that he is a lawful permanent resident, or admitted as a refugee, or that he has been granted asylum. Petitioner is therefore clearly not entitled to habeas relief under the limited scope of review afforded under § 1252(e). Petitioner, however, claims that his significant ties to this country in the 30 years prior to June 25, 2019 means that the Court's review limited habeas review under § 1252(e) violates the Suspension Clause of the United States Constitution. The Court disagrees.

In *Castro*, the Third Circuit rejected a similar challenge raised by a group of aliens, all of whom were apprehended "within close proximity to the border and shortly after their illegal crossing." Castro, 835 F.3d at 427. More specifically, *Castro* considered "whether § 1252 operates as an unconstitutional suspension of the writ by stripping courts of habeas jurisdiction over all but a few narrow questions." The Third Circuit, finding that it did not, "conclude[d] that Congress may, consonant with the Constitution, deny habeas review in federal court of claims relating to an alien's application for admission to the country, at least as to aliens who have been denied initial entry or who, like Petitioners, were apprehended very near the border and, essentially, immediately after surreptitious entry into the country." *Id.* at 434. The *Castro* Court, however, "[left] it to courts in the future to evaluate the Suspension Clause rights of an alien whose

presence in the United States goes meaningfully beyond that of Petitioners here." *Id.* at 449 n.3. Petitioner relies on this statement in support of his argument.

Petitioner claims that the Third Circuit's 2018 decision in *Osario-Martinez*, 893 F.3d 153, in which that court held that "the jurisdiction-stripping provision of [§ 1252(e)] operate[d] as an unconstitutional suspension of the writ of habeas corpus as applied to [Special Immigration Juvenile ("SIJ")] designees seeking judicial review of order of expedited removal[,]" *see id.* at 158, compels a similar finding in his case. (DE 1 at ¶ 13.) The Court disagrees. To be clear, many of the petitioners in *Osario-Martinez* were the same litigants to whom habeas relief was denied in *Castro*, and who "two years after their initial detention, . . . raise[d] what, at first glance, appear[ed] to be the same claims [that the Third Circuit rejected in *Castro*]." *Id.* Critically, however, the circuit noted the following:

> By virtue of satisfying the eligibility criteria for SIJ status and being accorded by Congress the statutory and due process rights that derive from it, [the *Osario-Martinez* petitioners], unlike the petitioners in *Castro*, [had in the two years after their initial detention, developed sufficient connections for purposes of] enforc[ing] their rights under the Suspension Clause.

*Id.*

Petitioner does not enjoy any such SIJ status, and the facts of *Osario-Martinez* are otherwise distinguishable from his case. Moreover, other than Petitioner's reference to *dicta* in *Castro* and *Osario-Martinez* suggesting that aliens with "sufficient connections to this country" may, in the abstract, be afforded more constitutional protections than aliens apprehended immediately after surreptitious entry into this county, he presents no other authority which demonstrates that his prior ties to the United States entitle him to the Suspension Clause rights afforded to the SIJ petitioners in *Osario-Martinez*.

9

Again, § 1225(b)(1) "permits the accelerated removal of aliens who, according to immigration officers, meet a set of statutorily determined criteria." *Osario-Martinez*, 835 F.3d at 162. The Circuit observed that the requirements include the following:

> (1) that the alien be 'arriving in the United States' or not have been continuously present in the United States for two years; (2) that the alien has 'not been admitted or paroled' into the United States; and (3) that the alien either lack valid immigration documentation or have made a misrepresentation in an attempt to attain immigration status." *Id.* (quoting 8 U.S.C. § 1225(b)(1)). "Aside from an asylum interview, such aliens are afforded no procedural protections, let alone the various procedural safeguards of standard removal proceedings.

*Id.* (citing 8 U.S.C. § 1225(b)(1)). The record makes clear that Petitioner falls under § 1225(b)(1)'s ambit, and that he received all of the procedural safeguards afforded to an arriving alien designated as such. Based on the foregoing considerations, and for the additional reasons detailed in the Court's August 12th opinion in Petitioner's First § 2241 Action, the Court will summarily dismiss the present Petition.

### IV. CONCLUSION

Petitioner's habeas petition is dismissed without prejudice as plainly unmeritorious at this time. *See* Habeas Rule 4. An accompanying Order follows.

8/15/2019      **s/John Michael Vazquez**
_____      _____
Date      JOHN MICHAEL VAZQUEZ
United States District Judge